UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE BENEFIT OF THE HOLDERS OF CD 2018-CD7, MORTGAGE TRUST COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-CD7, acting by and through its special servicer, Rialto Capital Advisors, LLC, as Special Servicer under the Pooling and Servicing Agreement dated as of August 1, 2018,<br><br>                                Plaintiff,<br><br>      - against -<br><br>PRINCE 26, LLC; 29 PRINCE STREET ASSOCIATES LLC; 137 THOMPSON STREET LLC; EDMOND LI; JENNIFER LI; NEW YORK CITY DEPARTMENT OF FINANCE; NEW YORK CITY OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS; and "JOHN DOE NO. 1" TO "JOHN DOE NO. 100" inclusive, the last one hundred names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint,<br><br>                            Defendants. | Case No.: 1:22-cv-05586<br><br><br><br><br><br><br><br><br><br><br><br><br>**COMPLAINT** |

Plaintiff Wells Fargo Bank, National Association ("Trustee"), as Trustee for the Benefit of the Holders of CD 2018-CD7, Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2018-CD7 (the "Trust") (Trustee as trustee of the Trust shall be referred to hereinafter as "Plaintiff"), acting by and through its special servicer, Rialto Capital Advisors, LLC ("Special Servicer"), as Special Servicer under the Pooling and Servicing Agreement dated as of August 1, 2018 (the "PSA"), alleges and states as follows:

**THE PARTIES**

1.     Trustee, acting solely in its capacity as trustee of the Trust, is a national banking association with its designated main office located in South Dakota.

2.     Trustee is the duly appointed and presently serving trustee of the Trust created under the PSA.

3.     Trustee, not individually, but solely in its capacity as trustee for the Trust under the PSA, acting by and through the Special Servicer, brings this action with express reference to the Loan (defined below) and the matters related thereto as hereinafter set forth.  Based upon South Dakota being the state of citizenship of Trustee, Plaintiff is a citizen of the State of South Dakota.

4.     Defendant Prince 26, LLC ("Prince 26") is a New York limited liability company, having its principal place of business at c/o Veracity Development, 199 Lafayette Street New York, New York 10012 Attn: Edmond Li.  As Prince 26 is a limited liability company, its citizenship is determined by that of its members.  Upon information and belief, defendants Edmond Li ("E. Li") and Jennifer Li ("J. Li" and, together with E. Li, "Guarantors"), both citizens of the State of New York, along with Prince 25 Manager, Inc., a New York corporation, are the sole members of Prince 26.  Based on the New York citizenship of its members, Prince 26 is a citizen of the State of New York.

5.     Defendant 29 Prince Street Associates LLC ("29 Prince") is a New York limited liability company, having its principal place of business at c/o Veracity Development, 199 Lafayette Street New York, New York 10012 Attn: Edmond Li.  As 29 Prince is a limited liability company, its citizenship is determined by that of its members.  Upon information and belief, Guarantors and 29 Prince Street Associates Manager, Inc., a New York corporation, are the sole

2

members of 29 Prince.  Based on the New York citizenship of its members, Prince 29 is a citizen of the State of New York.

6.      Defendant 137 Thompson Street LLC ("137 Thompson", and together with Prince 26 and 29 Prince, "Borrowers") is a New York limited liability company, having its principal place of business at c/o Veracity Development, 199 Lafayette Street New York, New York 10012 Attn: Edmond Li.  As 137 Thompson is a limited liability company, its citizenship is determined by that of its members.  Upon information and belief, Guarantors and 137 Thompson Street Management, Inc., a New York corporation, are the sole members of 137 Thompson.  Based on the New York citizenship of its members, 137 Thompson is a citizen of the State of New York.

7.      Borrowers are the owners of certain real properties and improvements located at (i) 26 Prince Street, New York, New York 10012 (Block: 493, Lot: 15), (ii) 29 Prince Street, New York, New York 10012 (Block: 508, Lot: 52), and (iii) 137 Thompson Street, New York, New York 10012 (Block: 517, Lot: 31), and as more particularly described in Exhibit A annexed hereto and made a part hereof (collectively, the "Mortgaged Premises").

8.      Defendant E. Li is, upon information and belief, an individual having an address of 2 Fenimore Road, Scarsdale, New York 10583 and a citizen of the State of New York.

9.      Defendant J. Li is, upon information and belief, an individual having an address of 2 Fenimore Road, Scarsdale, New York 10583 and a citizen of the State of New York.

10.      Plaintiff names Guarantors as party defendants herein because they guaranteed Borrower's obligations with respect to the Loan pursuant to the Guaranty (as defined below).

11.      Defendant New York Department of Finance ("DOF") is, upon information and belief, a municipal entity maintaining an address at 1 Centre Street, New York, New York 10007 and citizen of the State of New York.  Plaintiff names DOF as a defendant herein solely because

of any title or claim it might have against the Mortgaged Premises as a result of any unpaid New York City business corporation taxes and to extinguish such right, title, claim or interest in the Mortgaged Premises.

12.     Defendant New York City Office of Administrative Trials and Hearings ("OATH") is, upon information and belief, a municipal entity maintaining an address at 100 Church Street, 12th Floor, New York, New York 10007 and citizen of the State of New York.  Plaintiff names OATH as a defendant herein solely because of any title or claim it might have against the Mortgaged Premises as a result of any unpaid fines, violations and/or judgments issued against the Mortgaged Premises and to extinguish such right, title, claim or interest in the Mortgaged Premises, including but not limited to, the violations and/or judgments against the Mortgaged Premises referenced as ECB Violation No. 35465334H, in the original amount of $3,125.00.

13.     Defendants John Doe No. 1 through John Doe No. 100, inclusive, are fictitious and unknown to Plaintiff and are named herein to designate any and all tenants, occupants, persons, corporations or other entities, if any, having or claiming an interest in or lien upon the Mortgaged Premises or any part thereof, which is subject to the lien of the Mortgage.

14.     Based on the foregoing, this Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332(a)(2) because it is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

15.     Pursuant to Section 10.3(b) of the Loan Agreement (defined below), the state and federal courts located in New York County, New York are the exclusive venue of disputes under the contract:

> ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST
> LENDER OR BORROWER ARISING OUT OF OR RELATING
> TO THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS
> MAY AT LENDER'S OPTION BE INSTITUTED IN ANY

4

FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, PURSUANT TO SECTION 5- 1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW AND BORROWER WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.

16.     Based on the foregoing mandatory forum selection clause, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3).

17.     Plaintiff brings this action to foreclosure a mortgage in the original principal amount of $32,000,000.00 that is secured by, inter alia, the Mortgaged Premises.

## FACTUAL BACKGROUND

## FIRST COUNT
### (Mortgage Foreclosure)

**A.     The Loan and the Loan Documents**

18.     Pursuant to that certain Loan Agreement dated as of May 30, 2018 (the "Loan Agreement") and executed by and between Borrowers and Cantor Commercial Real Estate Lender, L.P., a Delaware limited partnership and Plaintiff's predecessor-in-interest ("Original Lender"), Original Lender made a loan to Borrowers in the original principal amount of $32,000,000.00 (the "Loan").

19.     To evidence its indebtedness under the Loan, on or about May 30, 2018, Borrowers executed and delivered, inter alia, to Original Lender that certain Consolidated, Amended and Restated Promissory Note in the original principal amount of $32,000,000.00 (the "Note"), payable on the first day of each and every month from July 1, 2018 until June 1, 2018 (the "Maturity Date"), at which time all unpaid principal, accrued and unpaid interest and all other

amounts due under the Loan Documents (as defined below) (collectively, the "Debt"), would be due and payable in full, unless earlier accelerated.

20.    Pursuant to the Note and Loan Agreement the Loan has a non-default interest at the rate of 5.2030% per annum (the "Interest Rate").

21.    As collateral security for the payment of the Note, on or about May 30, 2018, Borrowers executed, acknowledged and delivered to Original Lender that certain Consolidated, Amended and Restated Mortgage and Security Agreement and Spreader Agreement (the "Mortgage"), pursuant to which Borrowers, inter alia, granted to Original Lender a security interest in the Mortgaged Premises.  On June 6, 2018, Original Lender duly recorded the Mortgage with the Office of the City Register of the City of New York (the "Register's Office") as City Register File No. ("CRFN") 2018000188337.

22.    The Mortgage also includes a security interest in favor of the holder of the Mortgage in, inter alia, the buildings, structures, fixtures and other improvements now or hereafter located on the Mortgaged Premises as well as the Property Mortgaged, including, but not limited to, Land, Additional Land, Improvements, Easements, Equipment, Fixtures, Personal Property, Leases and Rents, and the intangibles (all as described and defined in the Mortgage), and such other property that may be subject to the Uniform Commercial Code (collectively, the "Collateral").  The Collateral is more particularly described in Exhibit B annexed hereto and made a part hereof.

23.    As additional collateral security for the payment of the Loan, Borrowers executed, acknowledged and delivered to Original Lender that certain Assignment of Leases and Rents dated as of May 30, 2018 (the "ALR") pursuant to which Borrowers, inter alia, granted to Original Lender a security interest in all Leases and Rents (as described and defined in the ALR) generated

by the Mortgaged Premises.  On June 6, 2018, Original Lender duly recorded the ALR with the Register's Office as CRFN 2018000188338.

24.     The ALR absolutely and unconditionally grants, transfers and assigns all right, title and interest in all current and future leases and rents in connection with the Mortgaged Premises. Original Lender and Borrowers intended for this assignment to constitute a present, absolute and unconditional assignment and not an assignment for additional security only.

25.     To perfect its interest in the Collateral, on June 6, 2018, Original Lender recorded a Uniform Commercial Code Financing Statement with the Register's Office as CRFN 2018000188339 (the "County UCC-1").  The County UCC-1 names Original Lender as the secured party and Borrowers as the debtors.

26.     To further perfect its interest in the Collateral, on June 25, 2018, Original Lender recorded a Uniform Commercial Code Financing Statement with the Secretary of the State of New York ("Sec. of State") as Filing Number 201806250293759 (the "State UCC-1").  The State UCC-1 names Original Lender as the secured party and Borrowers as the debtors.

27.     In order to induce Original Lender to give the Loan and to further secure its repayment, Guarantors executed that certain Guaranty of Recourse Obligations executed as of May 30, 2018 (the "Guaranty"), wherein and whereby Guarantors irrevocably and unconditionally guaranteed to Original Lender, its successors and assigns, the payment and performance of the Guaranteed Obligations, as defined therein, as and where the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise (The Loan Agreement, the Note, the Mortgage, the ALR, the County UCC-1, the State UCC-1, and all other documents executed in connection with the Loan shall be referred to collectively herein as the "Loan Documents").[1]

---

[1] Capitalized terms not defined herein shall have the same meaning as ascribed in the Loan Documents.

**B.    Original Lender's Assignment of the Loan Documents to Interim Holder**

28.    Original Lender executed an allonge to the Note dated June 18, 2018 (the "First Interim Allonge") indorsed in favor of CCRE Loan Seller IV, LLC ("Interim Holder"), and delivered the Note, with the First Interim Allonge affixed thereto, to Interim Holder.  By virtue of this delivery, Original Lender transferred to Interim Holder all of its rights, title and interest in and to the Note and Interim Holder became the holder of the Note.

29.    Original Lender also executed and delivered that certain Assignment of Mortgage effective as of June 18, 2018 (the "First Interim Assignment of Mortgage"), pursuant to which Original Lender transferred to Interim Holder all rights, title and interest in and to the Mortgage. By virtue of the First Interim Assignment of Mortgage, Interim Holder became the holder of the Mortgage.  On September 28, 2018, Interim Holder recorded the First Interim Assignment of Mortgage with the Register's Office as CRFN 2018000324995.

30.    Original Lender also executed and delivered that certain Assignment of Assignment of Leases and Rents dated as of June 18, 2018 (the "First Interim Assignment of ALR"), pursuant to which Original Lender transferred to Interim Holder all rights, title and interest in and to the ALR.  By virtue of the First Interim Assignment of ALR, Interim Holder became the holder of the ALR.  On September 25, 2018, Interim Holder recorded the First Interim Assignment of ALR with the Register's Office as CRFN 2018000319216.

31.    On September 25, 2018, Interim Holder recorded a Uniform Commercial Code Financing Statement Amendment with the Register's Office as CRFN 2018000319217, pursuant to which Original Lender assigned the County UCC-1 to Interim Holder.

#156901305_v5 527548.00060

32.     On September 24, 2018, Interim Holder recorded a Uniform Commercial Code Financing Statement Amendment with the Sec. of State as Filing Number 201809248436476, pursuant to which Original Lender assigned the State UCC-1 to Interim Holder.

**C.      Interim Holder's Assignment of the Loan Documents Back to Original Lender**

33.     Interim Holder executed an allonge to the Note dated August 24, 2018 (the "Second Interim Allonge") indorsed in favor of Original Lender, and delivered the Note, with the Second Interim Allonge affixed thereto, back to Original Lender.  By virtue of this delivery, Interim Holder transferred to Original Lender all of its rights, title and interest in and to the Note and Original Lender became the holder of the Note once again.

34.     Interim Holder also executed and delivered that certain Assignment of Mortgage dated August 24, 2018 (the "Second Interim Assignment of Mortgage"), pursuant to which Interim Holder transferred back to Original Lender all rights, title and interest in and to the Mortgage.  By virtue of the Second Interim Assignment of Mortgage, Original Lender became the holder of the Mortgage once again.  On September 28, 2018, Original Lender recorded Second Interim Assignment of Mortgage with the Register's Office as CRFN 2018000324996.

35.     Interim Holder also executed and delivered that certain Assignment of Assignment of Leases and Rents dated August 24, 2018 (the "Second Interim Assignment of ALR"), pursuant to which Interim Holder transferred back to Original Lender all rights, title and interest in and to the ALR.  By virtue of the Second Interim Assignment of ALR, Original Lender became the holder of the ALR once again.  On September 25, 2018, Original Lender recorded the Second Interim Assignment of ALR with the Register's Office as CRFN 2018000319218.

36.     On September 25, 2018, Original Lender recorded a Uniform Commercial Code Financing Statement Amendment with the Register's Office as CRFN 2018000319219, pursuant to which Interim Holder assigned the County UCC-1 back to Original Lender.

37.     On September 24, 2018, Original Lender recorded a Uniform Commercial Code Financing Statement Amendment with the Sec. of State as Filing Number 201809248436488, pursuant to which Interim Holder assigned the State UCC-1 back to Original Lender.

**D.     Original Lender's Assignment of the Loan Documents Plaintiff**

38.     Original Lender executed an allonge to the Note dated August 24, 2018 (the "Plaintiff Allonge") indorsed in blank/favor of Plaintiff, and delivered the Note, with the Plaintiff Allonge affixed thereto, to Plaintiff.  By virtue of this delivery, Original Lender transferred to Plaintiff all of its rights, title and interest in and to the Note and Plaintiff became the holder of the Note.

39.     Original Lender also executed and delivered that certain Assignment of Mortgage dated August 24, 2018 (the "Plaintiff Assignment of Mortgage"), pursuant to which Original Lender transferred to Plaintiff all rights, title and interest in and to the Mortgage.  By virtue of the Plaintiff Assignment of Mortgage, Plaintiff became the holder of the Mortgage.  On September 28, 2018, Plaintiff recorded the Plaintiff Assignment of Mortgage with the Register's Office as CRFN 2018000324997.

40.     Original Lender also executed and delivered that certain Assignment of Assignment of Leases and Rents dated August 24, 2018 (the "Plaintiff Assignment of ALR"), pursuant to which Original Lender transferred to Plaintiff all rights, title and interest in and to the ALR.  By virtue of the Plaintiff Assignment of ALR, Plaintiff became the holder of the ALR.  On September 25, 2018,

10

Plaintiff recorded the Plaintiff Assignment of ALR with the Register's Office as CRFN 2018000319220.

41.     On September 25, 2018, Plaintiff recorded a Uniform Commercial Code Financing Statement Amendment with the Register's Office as CRFN 2018000319221, pursuant to which Original Lender assigned the County UCC-1 to Plaintiff.

42.     On September 24, 2018, Plaintiff recorded a Uniform Commercial Code Financing Statement Amendment with the Sec. of State as Filing Number 201809248436490, pursuant to which Original Lender assigned the State UCC-1 to Plaintiff.

43.     As a result of the foregoing, Plaintiff is the current owner and holder of the Loan Documents, including, but not limited to, the Note and Mortgage.

**E.     Borrowers' Defaults Under the Loan Documents**

44.     Upon an Event of Default, Plaintiff may protect and enforce its rights against Borrowers and in and to the Mortgaged Premises by, _inter alia_, foreclosing on the Mortgage pursuant to Section 8.1.2 of the Loan Agreement and 7.1 of the Mortgage.  Moreover, Plaintiff's remedies under the Loan Documents are cumulative and concurrent such that Plaintiff may pursue them independently, singly, successively, together or otherwise.

45.     The Loan Documents provide that, upon the occurrence of an Event of Default, the whole principal sum shall bear interest at a default rate set forth therein (the "Default Rate"). Pursuant to the Loan Agreement, the Default Rate is equal to the lessor of (i) the Maximum Legal Rate or (ii) five percent (5%) above the Interest Rate.

46.     The Loan Documents further provide that, upon the occurrence of an Event of Default, the holder of the Mortgage shall be entitled to collect the rents and profits from the

#156901305_v5 527548.00060

Mortgaged Premises or to have a receiver appointed to take possession of the Mortgaged Premises and to collect the rents and profits therefrom.

47.     The Loan Documents further provide that, upon an Event of Default, Borrowers shall be liable for all costs incurred for collecting, securing or attempting to collect or secure any amounts due under the Loan Documents, including attorneys' fees and other legal costs.

48.     Section 2.3.2 of the Loan Agreement provides, in relevant part, that "[o]n July 1, 2018 . . . and each subsequent Payment Date up to and including the Maturity Date, Borrower shall make a payment to Lender of interest only in an amount equal to the Monthly Debt Service Payment Amount."

49.     Section 8.1(a)(i) of the Loan Agreement provides, in relevant part, that "if any portion of the Debt is not paid when due . . . or any other amount . . . is not paid in full on each Payment Date", then such default shall constitute an Event of Default.

50.     Section 2.3.4 of the Loan Agreement provides, in relevant part, that "[i]f any principal, interest or any other sums due under the Loan Documents . . . is not paid by Borrower on or prior to the date on which it is due, Borrower shall pay to Lender upon demand an amount equal to the lessor of (a) five percent (5%) of such unpaid sum, and (b) the Maximum Legal Date, in order to defray the expense incurred by Lender in handling and processing such delinquent payment and to compensate Lender for the loss of the use of such delinquent payment.  Any such amount shall be secured by the Security Instrument and the other Loan Documents to the extent permitted by applicable law."

51.     Borrowers failed to timely pay the Monthly Debt Service Payment Amount on the April 1, 2020 Monthly Payment Date and each Monthly Payment Date thereafter, until when

Borrowers failed to altogether make *any* requisite Monthly Debt Service Payment Amount on the April 1, 2021 Monthly Payment Date and each Monthly Payment Date thereafter.

52.     Accordingly, an Event of Default has occurred and is continuing since April 1, 2020 under the Loan Documents as a result of, inter alia, Borrowers' failure to comply with Section 2.3.2 of the Loan Agreement (the "Default").

53.     By notice dated April 7, 2022 (the "Notice of Default & Acceleration"), Plaintiff notified Borrowers and Guarantors of, inter alia, the Default, revoked Borrowers' license to collect the Rents and profits generated by the Mortgaged Premises, and accelerated all sums due and owing under the Loan Documents.

54.     Despite receiving the Notice of Default & Acceleration, neither Borrowers nor Guarantors have cured the Default nor paid the amounts due under the Loan Documents and, thus remain in default.

55.     As a result of the foregoing, there is now due and owing by Borrowers and Guarantors to Plaintiff, pursuant to the Loan Documents, unpaid principal in the amount of $30,000,000.00 plus accrued but unpaid interest at the rates set forth in the Loan Documents, together with any late charges, advances, and Plaintiff's costs and expenses of collection, including, without limitation, Plaintiff's reasonable attorneys' fees and costs.

56.     Accordingly, Plaintiff does hereby elect to demand immediate payment in full of all amounts due and owing under the Loan Documents.

57.     Plaintiff has complied with all the terms and provisions of the Loan Documents.

58.     In order to protect its security, Plaintiff has been and/or may be compelled during the pendency of this action, to make payments for taxes, assessments, insurance, utilities, maintenance, security and/or other charges affecting the Mortgaged Premises, or to protect them,

#156901305_v5 527548.00060

in amounts exceeding any sum now held by Plaintiff for any such purpose. Any payment made by Plaintiff, together with interest thereon, should be added to the mortgage indebtedness deemed due. Payment of all such sums is secured by the Mortgage prior to the right of any other defendant herein.

59.     The defendants named herein are obligated to pay the mortgage indebtedness and/or have, claim to have, or may have some possessory or other interest in or lien upon the Mortgaged Premises, or some part thereof, which interest or lien, if any, accrued subsequent to, and is subject and subordinate to, the lien of the Mortgage.

60.     Plaintiff has brought no other action or proceeding to recover any part of the mortgage indebtedness herein described.

        **WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Adjudging and decreeing the amounts due it as demanded in this Complaint by means of Borrowers' default under the Loan Documents;

B.     Adjudging and decreeing that the defendants herein, all persons claiming under them, and all persons making any claim against the Mortgaged Premises, which is the subject of this foreclosure action, subsequent to the filing of the notice of pendency of this action be barred and foreclosed of and from any and all estate, right, title, interest, claim, lien and equity of redemption of, in and to the Mortgaged Premises and each and every part and parcel thereof;

C.     Adjudging and decreeing that (a) the Mortgaged Premises may be decreed or sold, according to law, subject to a statutory right of redemption in the United States of America, if any, subject to taxes, assessments, water charges and sewer rents, subject to any state of facts an accurate, currently dated survey would disclose, subject to zoning ordinances and local regulations, and subject to all mortgages, conditions, restrictions, liens, encumbrances, rights and interests, if

14

any, that may be prior to the liens of the Loan Documents; (b) that the Mortgaged Premises may be sold in one or more parcels and in such order as determined by Plaintiff; (c) that the money resulting from said sale be brought into court; and (d) that Plaintiff be paid (1) the expenses of said sale, (2) the costs, allowances, and disbursements of this action, (3) the amounts due on the notes and mortgages, together with interest and late payment charges thereon as provided therein to the time of such payment, (4) all money advanced or paid by Plaintiff pursuant to any term or provision of any exhibit forming a part of this complaint, or to protect the mortgages or the Mortgaged Premises, (5) its expenses of collection, including reasonable attorneys' fees, and (6) all other charges and liens, with interest upon said amounts from the dates of the respective payments or advances all so far as the amount of money property applicable thereto will pay the same;

D.     Adjudging and decreeing that Borrowers be adjudged to pay any deficiency remaining under the Loan Documents after the application of the monies as aforesaid in accordance with Section 1371 of the Real Property Actions and Proceedings Law;

E.     Adjudging and decreeing that Plaintiff shall not be deemed to have waived, altered, released or changed the election hereinbefore made, by reason of any payment after the commencement of this action, of any or all of the defaults mentioned herein, and such election shall continue and remain effective;

F.     Adjudging and decreeing that in the event that Plaintiff possesses any other lien(s) against the Mortgaged Premises either by way of judgment, junior mortgage or otherwise, Plaintiff requests that such other lien(s) shall not be merged in Plaintiff's cause of action set forth in this complaint, but that Plaintiff shall be permitted to enforce said other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money or deficiency proceedings; and

G.      Awarding such other and further relief as the Court may deem just and proper.

### SECOND COUNT
### (Security Interest Foreclosure)

61.     Plaintiff repeats and incorporates herein the paragraphs set forth above as if fully set forth herein.

62.     Upon execution of the Mortgage, Borrowers granted to Original Lender, its successors and assigns, a valid and enforceable security interest in, inter alia, the Collateral.

63.     Plaintiff possess a duly perfected security interest in the Collateral by virtue of the filed State UCC-1, the County UCC-1, and the assignments thereof, as well as the recorded Mortgage and the assignments thereof.

64.     Pursuant to the terms contained in the Loan Documents, Plaintiff elects to have that Collateral sold by the sheriff together with the Mortgaged Premises at a single public sale.

65.     No person or entity possesses an interest in that Collateral superior to the security interest held by Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.      Adjudging that the Collateral be sold together with the Mortgaged Premises at a single public sale conducted by the sheriff to satisfy the amounts due to Plaintiff;

B.      Barring and foreclosing the defendants of all equity of redemption in and to the aforesaid personal property;

C.      Granting Plaintiff its costs of suit, including reasonable attorneys' fees; and

D.      Awarding such other and further relief as the Court may deem just and proper.

#156901305_v5 527548.00060

### THIRD COUNT
**(Possession)**

66.     Plaintiff repeats and incorporates herein the paragraphs set forth above as if fully set forth herein.

67.     Due to Borrowers' defaults under the terms of the Loan Documents, Plaintiff is entitled to possession of the Mortgaged Premises and the Collateral.

68.     Borrowers are now in possession of the Mortgaged Premises and have deprived, and continue to deprive, Plaintiff of possession of the Mortgaged Premises and the Collateral.

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.      Granting Plaintiff, its assignee or the purchaser of the Mortgaged Premises at the foreclosure sale, possession of the Mortgaged Premises and the Collateral;

B.      Awarding Plaintiff damages for <u>mesne</u> profits;

C.      Granting Plaintiff its costs of suit, including reasonable attorneys' fees; and

D.      Awarding such other and further relief as the Court may deem just and proper.

### FOURTH COUNT
**(Appointment of a Receiver)**

69.     Plaintiff repeats and incorporates herein the paragraphs set forth above as if fully set forth herein.

70.     The Leases, the Rents, the books, records, and other property relating to the ownership and operation of the Mortgaged Premises (collectively, the "<u>Borrowers' Assets</u>") are the sole assets of Borrowers.

71.     Except for certain limited qualifications as set forth in the Loan Documents, Borrowers have no personal liability for repayment of the Loan, and Plaintiff's primary recourse for repayment of the Loan is the collateral securing the Loan.

#156901305_v5 527548.00060

72.     The Loan Documents expressly allow Plaintiff to seek, and indicate Borrowers' express consent to, the appointment of a receiver upon the occurrence of an Event of Default.

73.     Borrowers and their agents are still in possession of Borrowers' Assets.

74.     Plaintiff, as an interested and secured party, is potentially threatened with material losses and injuries, including the Borrowers' Assets suffering continuous waste and a dissipation or diminution in value, if Borrowers remain in control of Borrowers' Assets.

75.     Therefore, in accordance with Rule 66 of the Federal Rules of Civil Procedure, Plaintiff, as a secured creditor, asks the Court to appoint a receiver to take immediate possession of and hold, subject to the discretion of this Court, the Mortgaged Premises and Borrowers' Assets.

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Appointing a receiver of the rent, income and profits of the Mortgaged Premises;

B.     Directing all tenants in possession of the Mortgaged Premises to pay the rent receiver all the rent, income and profits;

C.     Granting Plaintiff its costs of suit, including reasonable attorneys' fees; and

D.     Awarding such other and further relief as the Court may deem just and proper.

## FIFTH COUNT
### (Breach of Contract as Against Guarantors)

76.     Plaintiff repeats and incorporates herein the paragraphs set forth above as if fully set forth herein.

77.     In order to induce Original Lender to give the Loan and to further secure its repayment, Guarantors executed, acknowledge and delivered to Original Lender, its successors and assigns, the Guaranty.

78.     Pursuant to the Guaranty, Guarantors irrevocably and unconditionally covenanted and agreed to be liable for Borrowers' obligations and liabilities and Borrowers' assumed

18

obligations and liabilities under the Loan Agreement, and that Guarantors shall fully perform each and every term and provision thereof.

79.     Moreover, Guarantors agreed that, with or without notice or demand, Guarantors will reimburse Plaintiff, to the extent that such reimbursement is not made by Borrowers, for all expenses (including reasonable attorneys' fees) incurred by Plaintiff in connection with the collection of the Guaranteed Obligations or any portion thereof or with the enforcement of the Guaranty.

80.     Plaintiff is the current holder of the Note, the Mortgage and the Guaranty.

81.     Accordingly, Guarantors are obliged to Plaintiff under the Guaranty in an amount to be determined.

82.     Plaintiff seeks to foreclose upon the Mortgage and recover the full amount of the Debt pursuant to the terms of the Loan Documents, including attorneys' fees and costs, and that Guarantors be adjudged to pay the whole residue or so much thereof as the Court may determine to be just and equitable, of the Debt remaining unsatisfied after the sale of the Mortgaged Premises and the application of the proceeds pursuant to the provisions contained in such judgment, the amount thereof to be determined by the Court as provided in Section 1371 of the Real Property Action and Proceedings Law.

83.     Plaintiff has brought no other action or proceeding to recover any part of the Debt herein described.

**WHEREFORE**, Plaintiff demands judgment against Guarantors as follows:

A.     Fixing the amount due to Plaintiff from Guarantors pursuant to the Guaranty and any other applicable Loan Documents;

19

B.      Adjudging that Plaintiff is entitled to be paid by Guarantors the amounts due

pursuant to the Guaranty, with interest, advances, other charges, attorneys' fees and costs;

C.      Granting Plaintiff its costs of suit, including reasonable attorneys' fees; and,

D.      Awarding such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       June 30, 2022

**HOLLAND & KNIGHT LLP**

By:  _/s/ Keith M. Brandofino_
    Keith M. Brandofino, Esq.
    David V. Mignardi, Esq.
    Baron C. Giddings, Esq.
    Attorneys for Plaintiff
       *Wells Fargo Bank, National Association, as Trustee, for the Benefit of the Holders of CD 2018-CD7, Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2018-CD7, acting by and through its special servicer, Rialto Capital Advisors, LLC, as Special Servicer under the Pooling and Servicing Agreement dated as of August 1, 2018*
    900 Third Avenue, 20th Floor
    New York, New York 10022
    Tel: (212) 751-3001
    Fax: (212) 751-3113
    keith.brandofino@hklaw.com
    david.mignardi@hklaw.com
    baron.giddings@hklaw.com