UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WELLS FARGO BANK, NATIONAL ASSOCIATION,
AS TRUSTEE, FOR THE BENEFIT OF THE HOLDERS
OF CD 2018-CD7, MORTGAGE TRUST COMMERCIAL
MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2018-CD7, *acting by and through its special
servicer, Rialto Capital Advisors, LLC, as Special Servicer
under the Pooling and Servicing Agreement dated as of
August 1, 2018,*

Plaintiff,

-v-

PRINCE 26, LLC et al.,

Defendants.

22 Civ. 5586 (PAE) (OTW)

<u>OPINION & ORDER</u>

---

PAUL A. ENGELMAYER, District Judge:

This case arises out of a $32 million loan that defendants Prince 26, LLC ("Prince 26"),

29 Prince Street Associates LLC ("29 Prince"), and 137 Thompson Street LLC ("137

Thompson") (together, the "Borrowers") obtained from Cantor Commercial Real Estate Lending,

L.P. ("Cantor"). Dkt. 1 ("Compl.") ¶¶ 17–18, 43. Pursuant to a mortgage agreement (the

"Mortgage"), the Borrowers granted Cantor a security interest in three mixed-use properties at 26

Prince Street, 29 Prince Street, and 137 Thompson Street (the "mortgaged premises"). Dkt. 51

("Gauer Decl.") ¶ 9. Under the agreement, defendants Edmond Li and Jennifer Li (together, the

"Guarantors," and with the Borrowers, "answering defendants") guaranteed certain obligations

of the Borrowers. *Id.* ¶ 14.

Shortly after the onset of the COVID-19 pandemic, the Borrowers ceased making timely

payments on their loan. *Id.* ¶ 39. Plaintiff Wells Fargo Bank, National Association ("Wells

Fargo")—acting as trustee for the benefit of the holders of CD 2018-CD7, Mortgage Trust

Commercial Mortgage Pass-Through Certificates, Series 2018-CD7, and acting by and through its special servicer, Rialto Capital Advisors, LLC ("Rialto")—thereafter commenced this lawsuit. Wells Fargo represents that, after the agreement was executed, it became the holder of the note and mortgage at issue.  Dkt. 53 ("Mot.") at 1.  It brings claims for mortgage foreclosure, security interest foreclosure, possession, appointment of a receiver, and breach of contract under New York law.  Compl. ¶¶ 18–83.

Pending now is Wells Fargo's motion (1) for summary judgment against the Borrowers as to its claims of mortgage foreclosure, security interest foreclosure, and possession (the "foreclosure claims"); (2) for the appointment of Richard J. Madison, of Colliers International, as receiver to take immediate possession and control of the Borrowers' assets; (3) to strike the answer filed by answering defendants; (4) for default judgment against defendants New York City Department of Finance ("DOF") and New York City Office of Administrative Trials and Hearings ("OATH") as to the foreclosure claims; and (5) to sever its contract claim against the Guarantors for later determination.  Dkt. 50.  For the following reasons, the Court grants the motion for summary judgment on the foreclosure claims, referring the calculation of the amount of the judgment of foreclosure to the Honorable Ona T. Wang, United States Magistrate Judge, and severs the contract claim for later determination.  The Court denies without prejudice Wells Fargo's motions for the appointment of a receiver and for default judgment as to DOF and OATH, and denies as moot its motion to strike the answer.

## I.   Background

### A.   Factual Background[1]

---

[1] The Court's account of the underlying facts is drawn from the Complaint and the materials submitted on the pending motion: (1) in support of Wells Fargo's motion for summary judgment, the declarations of Joao Gauer, Dkt. 51 ("Gauer Decl."), and David V. Mignardi, Dkts. 52

### 1.    The Parties

Wells Fargo is a national banking association and citizen of South Dakota. Compl. ¶ 1.

The Guarantors, Edmond Li and Jennifer Li, are individuals and citizens of New York. *Id.* ¶¶ 4, 8–9.

The Borrowers—Prince 26, 29 Prince, and 137 Thompson—are New York limited liability companies. *Id.* ¶¶ 4–6. The Borrowers own certain real properties and improvements at 26 Prince Street, 29 Prince Street, and 137 Thompson Street, each in New York City. *Id.* ¶ 7. The sole members of Prince 26 are the Guarantors and Prince 25 Manager, Inc., a New York corporation. *Id.* ¶ 4. The sole members of 29 Prince are the Guarantors and 29 Prince Street Associates Manager, Inc., a New York corporation. *Id.* ¶ 5. The sole members of 137 Thompson are the Guarantors and 137 Thompson Street Management, Inc., a New York corporation. *Id.* ¶ 6.

DOF is a municipal entity named as a defendant "solely because of any title or claim it might have" as to the mortgaged premises based on unpaid corporation taxes. *Id.* ¶ 11.

OATH is a municipal entity named as a defendant "solely because of any title or claim it might have" as to the mortgaged premises based on unpaid fines, violations, and/or judgments, including a violation against the mortgaged premises in the amount of $3,125. *Id.* ¶ 12.

Defendants John Does No. 1 through 100 are named to "designate any and all tenants, occupants, persons, corporations or other entities" having or claiming an interest in the mortgaged premises. *Id.* ¶ 13.

---

("Mignardi Decl."), 64, and attached exhibits; and (2) in support of answering defendants' opposition, the declarations of Edmond Li, Dkt. 61 ("Li Decl."), and Grant R. Cornehls, Dkt. 62 ("Cornehls Decl."), and attached exhibits. At the pre-motion conference regarding this motion, the parties agreed that submission of a joint statement of stipulated facts would not be productive in this case.

### 2.    The Loan Agreement and Transfer of Interest to Wells Fargo

On May 30, 2018, the Borrowers entered into a loan agreement (the "Agreement") with Cantor as "Lender," under which Cantor made a loan in the original principal amount of $32 million. Gauer Decl. ¶¶ 6–7; Dkt. 51-2 ("Agreement") at 1. As part of the transaction, the Borrowers executed and delivered to Cantor (1) a consolidated, amended, and restated promissory note (the "Note") in the amount of $32 million, Gauer Decl. ¶ 8; Dkt. 51-3 ("Note"), and (2) a consolidated, amended, and restated mortgage agreement (the "Mortgage"), which granted Cantor a security interest in the mortgaged premises and their leases and rents, buildings, structures, fixtures, and other improvements, Gauer Decl. ¶¶ 9–11; Dkt. 51-4 ("Mortgage") at 3–6; Dkt. 51-5. The same day, May 30, 2018, the Guarantors executed a guaranty of recourse obligations (the "Guaranty," and together with the Agreement, Note, and Mortgage, the "Loan Documents"), under which they "unconditionally guarantee[d] to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable." Dkt. 51-8 ("Guaranty") § 1.1; *see* Gauer Decl. ¶ 14. The "Guaranteed Obligations" include those for which the Borrowers are liable under sections 3.1 and 5.1.31 of the Agreement, which, respectively, limit the Lender's ability to enforce the Borrowers' obligations and require the Borrowers to perform repairs on the mortgaged premises. Guaranty § 1.2; Agreement §§ 3.1, 5.1.31. In May 2018, Cantor obtained appraisals for the mortgaged premises, which estimated their combined market value to be $61.4 million. Li Decl. ¶ 6; Dkts. 61-1–61-3.

The Agreement requires the Borrowers to make monthly debt service payments, and provides that the failure to pay any sums due under the Loan Documents constitutes an Event of Default ("EOD"). Gauer Decl. ¶¶ 36–37; Agreement §§ 2.3.2, 8.1(a)(i). Under the Loan Documents, upon the occurrence of an EOD, the Lender, or holder of the Mortgage, may protect

4

and enforce its rights against the Borrowers and in the mortgaged premises by, *inter alia*, foreclosing on the Mortgage, applying for the appointment of a receiver, and collecting rents and profits from the mortgaged premises. Gauer Decl. ¶¶ 32, 34; Agreement § 8.1; Mortgage § 7.1(b), (g). The Agreement permits the delegation of certain responsibilities by the Lender to a loan servicer pursuant to a pooling and servicing agreement. Agreement § 9.3.

On June 18, 2018, Cantor transferred to CCRE Loan Seller IV, LLC ("CCRE") its rights, title, and interest in the Note, Mortgage, and assignment of leases and rents. Gauer Decl. ¶¶ 16–18; Note at 15; Dkts. 51-9 (assignment of Mortgage), 51-10 (assignment of leases and rents). On August 24, 2018, CCRE transferred back to Cantor its rights in the Note, Mortgage, and assignment of leases and rents. Gauer Decl. ¶¶ 21–23; Note at 16; Dkts. 51-13 (assignment of Mortgage), 51-14 (assignment of leases and rents). That day, August 24, 2018, Cantor transferred to Wells Fargo its rights, title, and interest in the Note, Mortgage, and assignment of leases and rents. Gauer Decl. ¶¶ 26–28; Note at 17; Dkts. 51-17 (assignment of Mortgage), 51-18 (assignment of leases and rents).

Pursuant to an August 1, 2018 Pooling and Servicing Agreement between, *inter alia*, Wells Fargo as trustee and Rialto as special servicer, Rialto has the obligation to "service and administer" certain designated loans on behalf of Wells Fargo in order to "maximize the timely and complete recovery of principal and interest." Dkt. 51-1 ("PSA") § 3.01. Rialto may also, upon the occurrence of an EOD, "commence a foreclosure or other acquisition" with respect to the mortgaged premises, subject to certain conditions. *Id.* § 3.10. On September 5, 2018, Wells Fargo appointed Rialto its attorney-in-fact and granted Rialto the right to "[d]emand, sue for, recover, collect and receive each and every sum of money, debt, account and interest" owed to

Wells Fargo and to take on its behalf "any lawful means for recovery," including foreclosing on property and seeking the appointment of a receiver. Gauer Decl. ¶ 42; Dkt. 51-22 at 1–2.

### 3.    The Borrowers Default on the Loan

The parties agree that, beginning on April 1, 2020, the Borrowers failed to make their monthly payments due under the Agreement. *See* Gauer Decl. ¶ 39; Li Decl. ¶ 3; Opp. at 2. Answering defendants represent that, in April 2020, the Borrowers lost approximately 40% of their residential and commercial tenants "solely as a result of the global COVID-19 pandemic" and "suffered a resulting dramatic loss in rental income necessary to pay the expenses of operating and maintaining the buildings and to make the payments due on the Loan." Li Decl. ¶ 3.

On April 7, 2022, Wells Fargo, as Lender and acting by and through Rialto as special servicer, notified the Borrowers and Guarantors of the default, revoked the Borrowers' license to collect rents and profits from the mortgaged premises, and declared immediately due the principal balance, unpaid interest, and attorneys' fees and costs owed under the Loan Documents. Gauer Decl. ¶ 41; Dkt. 51-21. Wells Fargo represents that answering defendants owe Wells Fargo principal in the amount of $30 million, plus accrued and unpaid interest, late charges, advances, and costs and expenses of collection. Gauer Decl. ¶ 43. It states that the Borrowers failed to deposit all rents and gross revenue from the mortgaged premises into a designated account and are "presumably diverting" such funds to themselves. *Id.* ¶ 50. It further alleges that the Borrowers have not paid taxes on the mortgaged premises, including $421,271.38 due on July 1, 2021 and $434,045.72 due on July 1, 2022, and that it had to advance payment of the unpaid taxes to DOF. *Id.* ¶ 51; Dkt. 51-23.

### B.    Procedural History

On June 30, 2022, Wells Fargo filed the Complaint. Dkt. 1. On August 5, 2022, Wells Fargo filed a notice of *lis pendens* as to the mortgaged premises. Dkt. 13. On August 31, 2022, after the Court extended their deadline to answer, Dkt. 12, the Borrowers and Guarantors answered, asserting two affirmative defenses. Dkt. 18.

On September 1, 2022, the Court scheduled an initial pretrial conference. Dkt. 19. On September 9, 2022, the parties filed a joint letter and proposed case management plan. Dkt. 26. On September 13, 2022, after holding the conference, the Court ordered a four-week period of formal and informal discovery limited to the two affirmative defenses raised by answering defendants, which the parties agreed presented the only controverted issues in the case: whether (1) Wells Fargo has standing to bring the action; and (2) the special servicer has authority to bring the action. Dkt. 28. The same day, the Court referred the case to Judge Wang for settlement. Dkt. 29.

On October 18, 2022, Wells Fargo obtained certificates of default as to DOF and OATH.[2] Dkts. 34, 35. On November 1, 2022, the parties filed a joint status update. Dkt. 38. Wells Fargo sought leave to move for summary judgment, representing that it had produced documentation regarding the two affirmative defenses and that the Borrowers and Guarantors had not responded or made additional document requests before the discovery period ended. *Id.* at 1–3. The Borrowers and Guarantors opposed Wells Fargo's request, asking that the Court allow the parties additional time to explore the possibility of settlement before Judge Wang. *Id.* at 4.

---

[2] DOF and OATH were served on July 14, 2022, with answers due August 4, 2022. Dkts. 9, 10. Neither has appeared, despite being later served orders in the case. *See* Dkts. 23, 46–47.

On November 10, 2022, the Court scheduled a pre-motion conference. Dkt. 41. Between

November 18 and 29, 2022, the parties exchanged pre-motion letters. Dkts. 43–44. On

December 6, 2022, the Court held the conference and set a briefing schedule for this motion.

Dkt. 45. On January 6, 2023, Wells Fargo filed the pending motion, along with declarations of

Joao Gauer and David V. Mignardi, a memorandum of law, and proposed orders in support.

Dkts. 50, 51 ("Gauer Decl."), 52 ("Mignardi Decl."), 53 ("Mot."), 55, 56. On January 30, 2023,

answering defendants opposed the motion, filing declarations of Edmond Li and Grant R.

Cornehls and a memorandum of law in support. Dkts. 61 ("Li Decl."), 62 ("Cornehls Decl."), 63

("Opp."). On February 6, 2023, Wells Fargo replied. Dkts. 64, 65 ("Reply").

On March 31, 2023, after a series of settlement calls before Judge Wang, the parties filed

a joint status update, in which they agreed that further settlement discussions were unlikely to be

productive. Dkt. 67.

## II. Discussion

### A. Motion for Summary Judgment

#### 1. Applicable Legal Standards

The Court may grant summary judgment only "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). The movant bears the burden of proving the absence of a question

of material fact. In making this determination, the Court must view all facts "in the light most

favorable" to the nonmoving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). If

the movant meets its burden, "the nonmoving party must come forward with admissible evidence

sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."

*Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on

mere speculation or conjecture as to the true nature of the facts to overcome a motion for

summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks omitted). Rather, the non-moving party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing law" preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam) (internal quotation marks omitted). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) (citation omitted).

### 2. Analysis

#### a. Foreclosure Claims

"Under New York law, summary judgment in a mortgage foreclosure action is appropriate where the note and mortgage are produced to the Court along with proof that the mortgagor has failed to make payments due." *LMREC III Note Holder, Inc. v. Hudson EFT LLC*, No. 20 Civ. 5063 (KMK), 2022 WL 3997017, at *5 (S.D.N.Y. Sept. 1, 2022) (citation omitted); *see, e.g., JPMorgan Chase Bank, Nat'l Ass'n v. Weinberger*, 142 A.D.3d 643, 645 (2016). "Where, as here, the defendant contests standing to foreclose, 'the plaintiff must prove its standing as part of its *prima facie* showing.'" *Gustavia Home, LLC v. Rutty*, 785 F. App'x 11, 14 (2d Cir. 2019) (quoting *JPMorgan Chase Bank*, 142 A.D.3d at 644). "A plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note." *Id.* "[T]he transfer of

9

the promissory note to the plaintiff before the action has commenced is sufficient to demonstrate

standing because the mortgage passes incident to the note." *Id.* "If the plaintiff establishes a

*prima facie* case, the burden then shifts to the defendant to demonstrate 'the existence of a triable

issue of fact as to a bona fide defense to the action, such as waiver, estoppel, bad faith, fraud, or

oppressive or unconscionable conduct on the part of the plaintiff.'" *Id.* (quoting *Capstone Bus.*

*Credit, LLC v. Imperia Fam. Realty, LLC*, 70 A.D.3d 882, 883 (2010)).

Here, Wells Fargo has made a *prima facie* showing as to its foreclosure claims. It has

produced the Agreement, Note, and Mortgage, which together (1) require the Borrowers to make

monthly payments toward the $32 million loan, *see* Gauer Decl. ¶¶ 36–37; Agreement §§ 2.3.2,

8.1(a)(i); (2) grant a security interest in the mortgaged premises, *see* Gauer Decl. ¶¶ 9–11;

Mortgage at 3–6; and (3) establish that the failure to make the monthly payments constitutes an

EOD that permits the mortgage holder to bring a foreclosure action, *see* Gauer Decl. ¶¶ 36–37;

Agreement §§ 2.3.2, 8.1; Mortgage § 7.1(b), (g). *Cf. Wells Fargo Bank, N.A. v. 390 Park Ave.*

*Assocs., LLC*, No. 16 Civ. 9112 (LGS), 2018 WL 4373996, at *5 (S.D.N.Y. Sept. 12, 2018) ("A

plaintiff's physical possession of a note at the time the complaint is filed establishes the

mortgage and note elements of the plaintiff's *prima facie* case."). And there is no dispute that,

beginning on April 1, 2020, the Borrowers failed to make their monthly payments due under the

Agreement and thus defaulted on their loan. *See* Gauer Decl. ¶ 39; Li Decl. ¶ 3; Opp. at 2.

The Court further finds that Wells Fargo has standing to pursue its foreclosure claims.

Wells Fargo has produced documentary evidence memorializing Cantor's transfer to Wells

Fargo of its rights, title, and interest in the Note, Mortgage, and assignment of leases and rents.

*See* Gauer Decl. ¶¶ 26–28; Note at 17; Dkts. 51-17 (assignment of Mortgage), 51-18 (assignment

of leases and rents). These documents satisfactorily demonstrate "the transfer of the promissory

note to the plaintiff before the action [] commenced," *Gustavia Home*, 785 F. App'x at 14, and establish that Wells Fargo was both the holder and assignee of the Note at the time it filed suit. *See, e.g.*, *Wilmington Tr., Nat'l Ass'n v. Winta Asset Mgmt. LLC*, No. 20 Civ. 5309 (JGK), 2022 WL 2657166, at *4 (S.D.N.Y. July 8, 2022); *Wells Fargo Bank Nat'l Ass'n v. 366 Realty LLC*, No. 17 Civ. 3570 (SJ) (RER), 2021 WL 9494173, at *2–3 (E.D.N.Y. Mar. 16, 2021).

Answering defendants do not dispute the Borrowers' liability or raise a bona fide defense as to the foreclosure claims. They do, however, challenge the admissibility of Wells Fargo's evidence. They argue that the declaration of Joao Gauer fails to lay an adequate foundation for the admissibility of the business records attached thereto—namely, the Loan Documents first created by Cantor and the assignments of those documents from Cantor to CCRE and Wells Fargo. Opp. at 5–6. In their view, the Loan Documents "are obviously not documents created by Special Servicer in the regular course of *its* business." *Id.* at 6. They thus contend that declarant Gauer, as an asset manager working for Rialto, "cannot have personal knowledge of the purported delivery of any of the loan documents," given that the documents were kept by Wells Fargo and created before the PSA that appointed Rialto as special servicer. *Id.*

Guarantor Edmond Li made a similar set of arguments in another foreclosure proceeding in this District as to a different set of properties, *Wilmington Tr., Nat'l Ass'n v. 31 Prince St., LLC*, No. 22 Civ. 5855 (JGK), 2023 WL 3647397 (S.D.N.Y. May 25, 2023). There, Judge Koeltl rejected their arguments on multiple grounds. First, he noted that the plaintiff had "provided proof of physical possession of the underlying Note and Mortgage," *id.* at *2, which, under New York law, "prove[s] a plaintiff's standing to foreclose on the mortgage associated with the note," *id.* (quoting *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 223 (2d Cir. 2016)). Second, he concluded that plaintiff's declaration, also by Gauer on behalf of the special servicer

in the case, sufficiently authenticated the documents, as the declaration indicated that "the Special Servicer relied on the documents provided during its day to day operations acting as the plaintiff's agent, and the documents were incorporated into its business." *Id.* Finally, he found that the documents were self-authenticating under Federal Rule of Evidence 902(1) because they were attached to a filing recorded with DOF with a government seal and signature. *Id.*

The Court likewise finds that the documents attached to Gauer's declaration here can be properly considered on this motion, and that answering defendants' arguments on this point wholly lack merit. As an initial matter, to the extent that answering defendants challenge Wells Fargo's standing, "New York courts have repeatedly held that proof of physical possession . . . is sufficient on its own to prove a plaintiff's standing to foreclose on the mortgage associated with the note." *OneWest Bank*, 827 F.3d at 223; *see also 366 Realty LLC*, 2021 WL 9494173, at *2. As to the consideration of the Loan Documents more generally, Gauer's declaration provides ample foundation for their admissibility. Gauer attests that, "[i]n connection with performing its duties as Special Servicer," Rialto "creates, receives, and maintains records, including the exhibits attached to the complaint and/or this declaration, in the regular course of the Special Servicer's business activities on Plaintiff's behalf." Gauer Decl. ¶ 3. He further attests that he is "familiar with Special Servicer's record-keeping practices and procedures" and conducted a "review of the business records of Plaintiff, maintained by Special Servicer, regarding Borrower." *Id.* And as to the documents, he attests that "all of the exhibits attached to the complaint and/or this declaration were received, created, or otherwise generated at or near the dates reflected," and "are true and correct copies of the corresponding documents in Plaintiff's business records that are in the custody and control of the Special Servicer." *Id.*

12

Such statements are sufficient for admission under Federal Rule of Evidence 803(6)'s "business records" exception to the rule against hearsay, as the declaration establishes, *inter alia*, that the records at issue were "kept in the course of a regularly conducted activity" of Rialto's work on behalf of Wells Fargo. Fed. R. Evid. 803(6); *cf., e.g.*, *Wilmington Tr.*, 2023 WL 3647397, at \*2; *U.S. Bank Nat'l Ass'n v. FCA & V LLC*, 76 Misc.3d 1208, 1208 (N.Y. Sup. Ct. 2022) (plaintiff established *prima facie* case on foreclosure claims based on affidavit from special servicer). Even where, as here, "the document is originally created by another entity," Wells Fargo and Cantor "need not testify when the document has been incorporated into the business records of the testifying entity." *United States v. Jakobetz*, 955 F.2d 786, 801 (2d Cir. 1992). Gauer's declaration sufficiently establishes that Rialto, in its capacity as special servicer for Wells Fargo, has incorporated the Loan Documents into its business records "to a sufficient degree to permit an inference as to [their] authenticity," *id.*, and thus provides an adequate foundation to admit these records. That Wells Fargo appointed Rialto as its attorney-in-fact only after Cantor transferred to Wells Fargo its interest in the Note and Mortgage, *see* Note at 17; Dkts. 51-17; Dkt. 51-22 at 1–2, does not alter this conclusion. The operative question is whether the underlying records have been sufficiently incorporated by the entity declaring its authenticity, not whether the declarant was present at the time of their creation.

Furthermore, the Loan Documents are not "the type of evidence that is so susceptible to fabrication that authentication by a representative of [the entity creating the documents] should be required." *Jakobetz*, 955 F.2d at 801. As in *Wilmington Trust*, Wells Fargo has produced documentation of the transfer of the Mortgage, as well as filings of the assignments of the Mortgage and leases and rents on the mortgaged premises with DOF's Office of the City Register of the City of New York. *See* Dkts. 51-17, 51-18. Because these filings contain a

13

government seal and official signature, they are self-authenticating records under Federal Rule of Evidence 902(1). *See Wilmington Tr.*, 2023 WL 3647397, at *2; Fed. R. Evid. 902(1).

Ultimately, Wells Fargo "has more than shown that the documents provided would be admissible at trial" through authentication by a competent custodian. *Wilmington Tr.*, 2023 WL 3647397, at *3 (citing *Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) ("We need not resolve whether the documents fall within . . . the business-records exception . . . so long as the evidence in question will be presented in admissible form at trial." (citation omitted))).

Accordingly, because answering defendants fail to raise a genuine issue of material fact precluding relief on the foreclosure claims, the Court grants summary judgment in Wells Fargo's favor on Counts I, II, and III of the Complaint.[3]

> b.    *Appointment of Receiver*

Wells Fargo argues that it is entitled, as a matter of law, to the appointment of a receiver because the Note and Agreement authorize such an appointment, and the Borrowers expressly

---

[3] In their answer, answering defendants asserted the affirmative defenses that (1) Wells Fargo lacks standing to bring the action; and (2) the special servicer lacks authority to bring the action on behalf of Wells Fargo. Dkt. 18 ¶¶ 26–27. Their opposition brief only passingly refers to these defenses, *see* Opp. at 4 (stating that burden on summary judgment "applies equally to Defendants' affirmative defenses as asserted in their answer"). To the extent these defenses are not waived, *see Wells Fargo Bank*, 2018 WL 4373996, at *5 n.3 (deeming waived defenses that defendant did not raise in its brief), the Court finds both unavailing.

First, as to Wells Fargo's standing, the Court finds that it has adduced sufficient, admissible evidence that, through a transfer of the mortgage by Cantor, Wells Fargo was the holder and assignee of the Note at the time it filed suit. *See Gustavia Home*, 785 F. App'x at 14; *Wilmington Tr.*, 2023 WL 3647397, at *3 (finding identical defense lacked merit "because the defendants[] have not met their burden to show the insufficiency of the documents provided"). Second, as to Rialto's authority to bring this action, the Court finds that the PSA and Wells Fargo's appointment of Rialto as its attorney-in-fact, *see* Gauer Decl. ¶ 42; Dkt. 51-22 at 1–2, confer the power to bring this action on behalf of Wells Fargo. *See Wilmington Tr.*, 2023 WL 3647397, at *3 (finding identical defense lacked merit where PSA and power-of-attorney "make[] clear that the Special Servicer, as the plaintiff's agent, is authorized to bring suit on behalf of the plaintiff").

consented to such an appointment upon default on their loan. Mot. at 11–12. In support, Wells Fargo cites: (1) the imminent danger that the mortgaged premises will "suffer waste and diminish in value in the absence of an appointed receiver," given that the Borrowers have not remitted rents, complied with its cash management obligations, or paid taxes on the property, *id.* at 12–13; (2) the inadequacy of Wells Fargo's legal remedies, as the loan is "generally non-recourse," and the sole source of recovery is the Borrowers' assets, *id.* at 13; and (3) the likelihood of success on the merits of the foreclosure claims, *id. See also* Reply at 7–9. It notes that Judge Koeltl granted a motion to appoint Madison[4] as receiver in the above-cited proceeding involving Guarantor Edmond Li's loan in connection to another set of properties. *See* Reply at 9; *Wilmington Tr., Nat'l Ass'n v. 31 Prince St., LLC*, No. 22 Civ. 5855 (JGK), 2023 WL 414249, at *3–5 (S.D.N.Y. Jan. 25, 2023); *see also* Dkt. 64 ¶¶ 4–5, 64-1 (decision granting appointment).

Answering defendants oppose the appointment of a receiver, contending that a receiver would be unnecessary if the Court grants summary judgment on the foreclosure claims. Opp. at 11. They assert that the Agreement provides only that Wells Fargo may apply for a receiver upon the appropriate showing, and that Wells Fargo has failed to make such a showing or proved that the amount owed under the Agreement exceeds the value of the mortgaged premises, which were appraised in 2018 at a combined value of approximately $61.4 million. *Id.* at 3–4, 8–9, 11; *see* Li Decl. ¶ 6. They also object to Madison's appointment, asserting that, because he has already been appointed as receiver in multiple proceedings involving the same plaintiff, he may be unable to carry out his duties impartially. Opp. at 12–13; *see also* Cornehls Decl. ¶¶ 4–10.

---

[4] Gauer's declaration states that Wells Fargo requests the appointment of William Colucci as receiver. Gauer Decl. ¶ 53. Nonetheless, the Court presumes, based on its briefs, that Wells Fargo seeks the appointment of Madison in this case.

Under Federal Rule of Civil Procedure 66, district courts have the equitable power to appoint a receiver in order to protect a party's interest. Fed. R. Civ. P. 66. "Whether a federal court should appoint a receiver in a diversity action is governed by federal law." *Wells Fargo Bank, Nat'l Ass'n v. 3708 Vestal Pkwy E., LLC*, No. 22 Civ. 4714 (ER), 2023 WL 4741216, at *3 (S.D.N.Y. July 25, 2023) (quoting *U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 249 (S.D.N.Y. 2012)). "The appointment of a receiver is considered to be an extraordinary remedy, and should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property." *Nesbitt Bellevue Prop.*, 866 F. Supp. 2d at 249 (quoting *Rosen v. Siegel*, 106 F.3d 28, 34 (2d Cir. 1997)). "As a general matter, when a receiver is sought pursuant to Rule 66 in a diversity case, the appointment of a receiver in equity is not a substantive right but is a remedy that is ancillary to the primary relief prayed for in the suit," with the "classic example" being one in which "a plaintiff has brought a foreclosure action and requests a temporary receiver pending the foreclosure." *Id.* at 254–55 (citation omitted) (collecting cases); *see Sovereign Bank v. 347 E. 173 LLC*, No. 11 Civ. 1061 (LBS), 2011 WL 2693525, at *3 (S.D.N.Y. June 29, 2011) (citing *Gordon v. Washington*, 295 U.S. 30, 37 (1935)).

"[T]he existence of a provision authorizing the application for a receiver in the event of a default[] 'strongly supports the appointment of a receiver' when there is a default." *Nesbitt Bellevue Prop.*, 866 F. Supp. 2d at 250 (quoting *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988)); *see, e.g., Kairos Credit Strategies Op. P'ship, LP v. Friars Nat'l Ass'n, Inc.*, No. 23 Civ. 2960 (JPO), 2023 WL 3675921, at *3 (S.D.N.Y. May 26, 2023). But the "mere existence of such contractual provision does not, however, dispose of the Court's inquiry in plaintiff's favor." *Wells Fargo*, 2023 WL 4741216, at *4 (citation omitted). Instead, "the burden remains on the plaintiff" to make an "'adequate showing'" that such an appointment is

16

warranted. *Nesbitt Bellevue Prop.*, 866 F. Supp. 2d at 250 (quoting *Citibank*, 839 F.2d at 97).

Courts consider the following factors when determining whether to appoint a receiver:

> [1] [f]raudulent conduct on the part of defendant; [2] the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; [3] the inadequacy of the available legal remedies; [4] the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, [5] in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

*Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) (quoting 12 Wright & Miller,

Fed. Prac. & Proc. § 2983 (1999)); *see, e.g., Kairos Credit Strategies*, 2023 WL 3675921, at *2.

Here, the Mortgage provides that the Lender "may" seek appointment of a receiver upon

the occurrence of an EOD, "without notice and without regard for the adequacy of the security

for the Debt and without regard for the solvency of Borrower, any guarantor or indemnitor with

respect to the Loan or any Person otherwise liable for the payment of the Debt or any part

thereof." Mortgage § 7.1(g). Such a provision—although it conveys only the parties'

authorization to the Lender to apply for the appointment of a receiver, not a blanket consent to

the appointment itself—"strongly supports the appointment of a receiver," *Nesbitt Bellevue

Prop.*, 866 F. Supp. 2d at 250 (citation omitted). The answering defendants' failure to pay

property taxes on the mortgaged premises, *see* Gauer Decl. ¶ 51; Dkt. 51-23, also favors the

appointment of a receiver, as such a failure "risk[s] a tax lien being levied against the

[p]roperties," which in turn "could result in a diminution in value . . . and, in the most extreme

case, seizure," *Wilmington Tr.*, 2023 WL 414249, at *3 (appointing receiver where defendants

undisputedly failed to pay property taxes; plaintiff was likely to succeed in underlying

foreclosure suit; and borrower had not properly forwarded rent payments to plaintiff).

Nevertheless, in light of the Court's decision to grant summary judgment as to the

foreclosure claims, the Court denies Wells Fargo's application for the appointment of a receiver.

As yet, there has not been a showing that such an appointment is "clearly necessary to protect plaintiff's interests in the property," *Nesbitt Bellevue Prop.*, 866 F. Supp. 2d at 249 (citation omitted).  And the grant of summary judgment to Wells Fargo on the foreclosure claims may well set in motion events that moot the need for court appointment of a receiver.  In fact, courts in this District that have appointed receivers have typically done so when such an appointment is sought *before* the plaintiff has moved for foreclosure or other relief.  *See, e.g., id.* at 256 (appointing receiver pending later action for foreclosure, as "it would not serve the purpose of equity to dismiss this case and force the plaintiff to file a foreclosure action in six different states before the appointment of a receiver"); *Wilmington Tr.*, 2023 WL 414249, at *3 (appointing receiver where court had not yet ruled on foreclosure claims); *Kairos Credit Strategies*, 2023 WL 3675921, at *4 (same, on motion for emergency relief); *Neli Int'l Inc. v. Premier Rest. Grp., LLC*, No. 23 Civ. 2725 (ALC), 2023 WL 3412771, at *3 (S.D.N.Y. May 12, 2023) (same, on motion for emergency relief where defendant did not oppose motion); *Miss Jones LLC v. Stiles*, No. 17 Civ. 1450 (NSR), 2019 WL 3034906, at *4–6 (S.D.N.Y. July 10, 2019) (appointing receiver "for the duration of th[e] foreclosure action," and where defendant had "continue[d] to fail to appropriately care for the property").[5]

Accordingly, given that the Court has granted the primary relief of foreclosure on the mortgaged premises, the Court denies the ancillary relief of the appointment of a receiver, without prejudice to Wells Fargo's renewal of its application based on a showing that foreclosure

---

[5] It is, in fact, unclear whether Wells Fargo seeks appointment of a receiver in the event that it prevails on its foreclosure claims, or only to cover the period beforehand. *See* Mot. at 3 ("As Plaintiff possesses no other adequate remedy at law during the pendency of this action, this Court should . . . . appoint a receiver over Borrowers' Assets."), 13 ("A receiver is needed . . . until this action is resolved . . . .").

is inadequate to protect its interests.[6] *See Wells Fargo Bank, Nat'l Ass'n v. 5615 N. LLC*, No. 20

Civ. 2048 (VSB), 2022 WL 15523689, at *8 (S.D.N.Y. Oct. 27, 2022) (denying as moot motion

to appoint receiver where court contemporaneously granted summary judgment as to foreclosure

claims, without prejudice to renewal of motion); *366 Realty LLC*, 2021 WL 9494173, at *5

(denying appointment of receiver "without more information" where court granted judgment on

foreclosure claims and plaintiff only "generally claim[ed]" risk of diminution of property); *cf.*

*Wells Fargo*, 2023 WL 4741216, at *5 (denying appointment of receiver where, *inter alia*,

plaintiff failed to prove that "foreclosing the Collateral would provide an inadequate remedy").

### B.    Motions for Default Judgment

#### 1.    Applicable Legal Standards

Federal Rule of Civil Procedure 55 sets forth a two-step process for entry of default

judgment against a party who fails to defend: (1) the entry of default, which "formalizes a judicial

recognition that a defendant has, through its failure to defend the action, admitted liability to the

plaintiff," and (2) the entry of a default judgment, which "converts the defendant's admission of

liability into a final judgment that terminates the litigation and awards the plaintiff any relief to

which the court decides it is entitled." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114,

128 (2d Cir. 2011); *see, e.g., Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  "A district

---

[6] Such an application would require a stronger showing than the one provided here.  Aside from evidence that answering defendants have failed to forward rent payments and pay taxes, Wells Fargo makes largely conclusory allegations that, "[w]ith the status of the Property unknown to Plaintiff and seemingly slipping into a state of abandonment, risk of waste and dissipation or diminution in the value of Plaintiff's collateral seems likely, if not, certain," Mot. at 13.  *Contra, e.g., Kairos Credit Strategies*, 2023 WL 3675921, at *3–5 (appointing receiver where property was largely vacant, suffered water damage, and had no active property manager, "making accidents even more probable"); *Sovereign Bank*, 2011 WL 2693525, at *3 (appointing receiver where borrowers had not made mortgage payments despite "receiv[ing] substantial rents from the properties," failed to pay real estate taxes, and "allowed at least one building to fall into serious disrepair").  A renewed application should also address with specificity answering defendants' claims as to the relative value of the loan and the mortgaged premises.

court is empowered under Rule 55(b)(2), in the exercise of its discretion, to 'conduct hearings or make referrals' as may be necessary, *inter alia*, to determine the amount of damages or establish the truth of the plaintiff's allegations." *Mickalis Pawn Shop*, 645 F.3d at 129 (quoting Fed. R. Civ. P. 55(b)).  Given its "'strong preference for resolving disputes on the merits,' and because 'a default judgment is the most severe sanction which the court may apply,'" the Second Circuit has "characterized a district court's discretion in proceeding under Rule 55 as 'circumscribed.'" *Id.* (first quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); and then quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993)).

As to the entry of a default judgment, "[i]t is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." *Id.* at 137 (citation omitted).  However, the district court is "required to determine whether [the plaintiff's] allegations establish [the defendant's] liability as a matter of law." *Finkel*, 577 F.3d at 84; *see, e.g.*, *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) ("[A] defendant's default does no more than concede the complaint's factual allegations.").  "The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than that it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations." *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020).  In assessing a motion for default judgment, the district court must accept as true all of the factual allegations in the complaint, except those relating to damages. *Au Bon Pain Corp.*, 653 F.2d at 65.  "The legal sufficiency of the[] claims is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the non-defaulting party's favor." *Spin Master*, 463 F. Supp. 3d at 367–68 (citation omitted).

### 2.   Analysis

Wells Fargo moves for default judgment against DOF, as to any title or claim it might have to unpaid corporation taxes on the mortgaged premises, and OATH, as to any title or claim it might have to unpaid fines, violations, and/or judgments, including a violation in the amount of $3,125, on the mortgaged premises. Mot. at 10; *see also* Compl. ¶¶ 11–12.

Wells Fargo has obtained certificates of default as to both defendants, *see* Dkts. 34, 35, and no party has opposed the relief sought. However, neither the Complaint nor Wells Fargo's briefing sufficiently "establish [the defendant's] liability as a matter of law," *Finkel*, 577 F.3d at 84. The Complaint merely describes each entity and why they have been sued. *See* Compl. ¶¶ 11–12. And Wells Fargo's briefing only summarizes the Complaint and the circumstances of DOF and OATH's default in this case. *See* Mot. at 10. Although the Court appreciates that Wells Fargo has sued these municipal defendants simply to extinguish their potential claims to the mortgaged premises, the Court requires further factual and legal basis on which to grant judgment on its claims against them. The Court thus denies the motion for default judgment, without prejudice to renewal of the motion with a memorandum of law setting forth the legal basis on which to find that the Complaint's allegations, taken as true, establish its claims against DOF and OATH.

### C.   Motion to Strike

Wells Fargo moves to strike the first and second affirmative defenses in answering defendants' answer. The Court's decision herein to grant summary judgment as to the foreclosure claims, however, has effectively rejected those affirmative defenses, which answering defendants do not invoke with any specificity in their opposition brief. *See supra* note

3. Accordingly, the Court denies as moot Wells Fargo's motion to strike. *See Wilmington Tr.*,
2023 WL 3647397, at *3 (denying as moot motion to strike identical affirmative defenses where
court found that defenses lacked merit); *cf., e.g., Holland v. Proj. Return Found.*, 198 F.3d 233,
233 (2d Cir. 1999) (denying as moot motion to strike where motion resolved on other grounds);
*LS Home Servs., Inc. v. Blackman Plumbing Supply Co., Inc.*, 582 F. App'x 43, 44 (2d Cir. 2014)
(same).

### D.     Severance of Count V

Finally, Wells Fargo requests that the Court sever the fifth count of the Complaint—for
breach of contract, against the Guarantors—for later determination in the event that an auction of
the mortgaged premises results in a deficiency with respect to the amount due. Mot. at 14–15.
Wells Fargo argues that such a deficiency, as well as events and conditions aside from the
default, may render the Guarantors personally liable under the Agreement. *Id.* at 15. Answering
defendants do not oppose this request, though they contend that the Guarantors guaranteed only
certain specified obligations under sections 3.1 and 5.1.31 of the Agreement and did not
unconditionally guarantee repayment of the loan. Opp. at 3 n.1.

Federal Rule of Civil Procedure 21 permits a court to "sever any claim against a party."
Fed. R. Civ. P. 21. "The decision whether to grant a severance motion is committed to the sound
discretion of the trial court." *New York v. Hendrickson Bros, Inc.*, 840 F.2d 1065, 1082 (2d Cir.
1988). In determining whether to sever a claim, courts consider, *inter alia*, "(1) whether
severance will serve judicial economy; (2) whether prejudice to the parties would be caused by
severance; and (3) whether the claims involve different witnesses and evidence." *Pena-Sanchez
v. New York City*, No. 22 Civ. 4942 (LTS), 2022 WL 2954367, at *2 (S.D.N.Y. July 26, 2022)
(citation omitted); *see, e.g., Crown Cork & Seal Co., Inc. Master Ret. Tr. v. Credit Suisse First
Bos. Corp.*, 288 F.R.D. 331, 332–33 (S.D.N.Y. 2013). "Severance requires the presence of only

one of these conditions." *Saleh v. Digital Realty Tr., Inc.*, No. 21 Civ. 9005 (PAE), 2022 WL 3139733, at *6 (S.D.N.Y. Aug. 5, 2022) (citation omitted).

The Court finds that severance of the contract claim would promote judicial economy in light of the differing bases of the foreclosure claims and any eventual contract claim, as well as the possibility that the foreclosure may moot the contract claim. Severance of the claim would also avoid prejudicing the rights of Wells Fargo to recover from the Guarantors at a later point and would result in no prejudice to answering defendants, who have not opposed the motion. Thus, without opining on the viability of any contract claim against the Guarantors, the Court grants the motion to sever Count V. *See, e.g.*, *Wilmington Tr.*, 2023 WL 3647397, at *4 (granting unopposed motion to sever contract claim on same basis); *Wells Fargo Bank*, 2022 WL 15523689, at *7 (same); *Wilmington Tr.*, 2022 WL 2657166, at *8 (same).

## CONCLUSION

For the foregoing reasons, the Court grants Wells Fargo's motion for summary judgment as to its claims of mortgage foreclosure, security interest foreclosure, and possession, and refers the calculation of the amount of the judgment of foreclosure to Judge Wang, to whom this case is already referred. Furthermore, the Court severs Count V of the Complaint, which alleges breach of contract by the Guarantors, for later determination. As to the remaining relief sought by Wells Fargo, the Court denies without prejudice its motions for appointment of a receiver and for default judgment against DOF and OATH, and denies as moot its motion to strike the answer by answering defendants.

The Court directs that, should Wells Fargo continue to pursue a default judgment against DOF and OATH, it file, within two weeks of this decision, a memorandum of law setting forth the legal basis on which to find that the Complaint's factual allegations, taken as true, establish its claims against DOF and OATH. The Court further directs that, within four weeks of this

opinion, Wells Fargo file a letter stating whether it wishes to proceed with its application for the appointment of a receiver and its contract claim against the Guarantors.

      The Clerk of Court is respectfully directed to terminate all pending motions.

      SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: August 10, 2023
      New York, New York