UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE BENEFIT OF THE HOLDERS OF CD 2018-CD7, MORTGAGE TRUST COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-CD7,

Plaintiff,

-v-

PRINCE 26, LLC *et al.*,

Defendants.

22 Civ. 5586 (PAE) (OTW)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This is a mortgage foreclosure action, arising out of a $32 million loan that defendants Prince 26, LLC, 29 Prince Street Associates LLC, and 137 Thompson Street LLC (the "borrowers") obtained from Cantor Commercial Real Estate Lending, L.P. ("Cantor"). Pursuant to a mortgage agreement, those defendants granted Cantor a security interest in three mixed-use properties, and defendants Edmond Li and Jennifer Li (the "guarantors") guaranteed certain obligations of the borrowers. Shortly after the onset of the COVID-19 pandemic, the borrowers ceased making timely payments on their loan. On June 30, 2022, plaintiff Wells Fargo Bank, National Association ("Wells Fargo")— acting as trustee for the benefit of the holders of CD 2018-CD7, Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2018-CD7, and acting by and through its special servicer, Rialto Capital Advisors, LLC ("Rialto")— commenced this lawsuit.

On August 10, 2023, the Court, *inter alia*, granted summary judgment against the borrowers as to Wells Fargo's claims of mortgage foreclosure, security interest foreclosure, and

possession. Dkt. 68. That day, the Court referred the calculation of the amount of the judgment of foreclosure to the Honorable Ona T. Wang, United States Magistrate Judge. *Id.* Before the Court now is Judge Wang's April 28, 2026 Report and Recommendation as to the judgment of foreclosure. Dkt. 94 ("Report"). For the reasons that follow, the Court adopts the Report in full.

## I.    Relevant Procedural History

On November 27, 2023, Judge Wang directed the parties to meet and confer as to the amount of the judgment of foreclosure. Dkt. 78. On January 16, 2024, the parties attended a pre-settlement conference, at which Judge Wang set a schedule for briefing as to that calculation. Dkt. 80. On January 26, 2024, Wells Fargo filed its brief in support of its proposed damages computation, and supportive declarations. Dkts. 81–83. On March 1, 2024, defendants opposed. Dkt. 84. On December 6, 2024, Judge Wang directed Wells Fargo to file unredacted versions of bills related to legal services rendered, Dkt. 86, which Wells Fargo did that day, Dkts. 87–88.

Between June 5, 2025 and April 9, 2026, Wells Fargo filed four letters inquiring as to the status of the damages inquest. Dkts. 89–92. On April 16, 2026, this Court issued an order apologizing for the long delay in resolving the inquest and assuring the parties that Judge Wang's Report and Recommendation would issue by May 8, 2026. Dkt. 93.

On April 28, 2026, Judge Wang issued the Report. Dkt. 94. It recommends that Wells Fargo be awarded a total judgment of $46,677,820.90, addressing each category of damages sought by Wells Fargo. *Id.* at 1. It further recommends that Wells Fargo be granted leave to make an additional application for damages, including additional interest, any liquidation fee, and any additional attorneys' costs and fees after completing the anticipated foreclosure sale. *Id.* at 18–19.

2

On June 2, 2026, defendants objected and filed a supporting declaration. Dkt. 98 ("Defs.' Obj."). Defendants do not challenge the Report's damages computation. Instead, they argue that the recommended judgment "shocks the conscience," and that the Court, "in the exercise of its broad equitable powers, should eliminate or reduce the excessive default interest, special servicer fields, and 'yield maintenance premium.'" *Id.* at 2. On June 16, 2026, Wells Fargo responded to defendants' objections. Dkt. 99.

## II.    Legal Standard

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *King v. Greiner*, No. 2 Civ. 5810, 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (citing *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)); *see also Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006).

When specific objections are made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). Where a report and recommendation did not expressly address arguments raised before the Magistrate Judge, the Court reviews such arguments *de novo*. *See Sweigert v. Goodman*, No. 18 Civ. 8653, 2021 WL 2678621, at *7 (S.D.N.Y. June 30, 2021); *Kairam v. W. Side GI, LLC*, No. 18 Civ. 1005, 2025 WL 2778915, at *4–5 (S.D.N.Y. Sept. 30, 2025).

### III.    Discussion

### A.    Damages Computation

The Report recommends this Court find that the total amount due on the loan, as of December 1, 2023 (the date through which Wells Fargo calculated damages), is $46,677,820.90. Report at 1.  As to each category of damages, the Report recommends as follows:

- $43,512,737.59 in unpaid principal and interest;

- $1,430,692.04 in reimbursement for combined tax and insurance advances;

- $121,129.56 in attorneys' fees and costs;

- $270,068.40 in late fees;

- $212,222.22 in special servicer fees; and

- $1,130,971.09 in yield maintenance premium.

*Id.* at 1.

The Report further recommends that Wells Fargo be granted leave to make an additional application for damages, including (1) additional interest, (2) any liquidation fee, and (3) any additional attorneys' costs and fees after completing the anticipated foreclosure sale.  *Id.* at 18–19.  The Report leaves open the possibility of additional interest because Wells Fargo's damages calculation did not account for interest that accrued between January 1, 2024 and April 28, 2026, when the Report issued.  *Id.* at 7.  And the Report reserves for later adjudication of the liquidation fee and attorneys' costs and fees related to the foreclosure sale, because foreclosure has yet to occur.  *Id.* at 13.

Defendants do not object to the Report's computation of the judgment of foreclosure. Accordingly, the Court reviews the recommended judgment for clear error.  Careful review of Judge Wang's thorough and well-reasoned Report reveals no facial error in its conclusions as to

the judgment. The Court therefore adopts that recommendation in full. *See, e.g., BMO Bank N.A. v. Gattani*, No. 24 Civ. 6897 (PAE), 2025 WL 2696363, at *1 (S.D.N.Y. Sept. 22, 2025) (reviewing damages inquest for clear error in absence of objections, and adopting recommendation in full); *KLM Consulting LLC v. Panacea Shipping Co.*, No. 22 Civ. 5194 (PAE), 2024 WL 5199835, at *1 (S.D.N.Y. Dec. 23, 2024) (same).

### B.    Equitable Powers

Notwithstanding the conceded accuracy of the calculation, defendants argue that it would be "grossly inequitable" to award Wells Fargo more than $46 million on a loan in the original principal amount of $32 million, because Wells Fargo "acted in bad faith and unduly prolonged the foreclosure proceedings." Defs.' Obj. at 6–7. Accordingly, they argue, the Court should "invoke its broad equitable powers" to eliminate or reduce the default interest, special servicer fees, and yield maintenance premium. *Id.* at 7.

The Report does not address defendants' request that the Court exercise its discretion to reduce defendants' damages computation. It only notes, in a footnote, that defendants "assert, in conclusory fashion, that Plaintiff prolonged the action and refused to negotiate in good faith when the COVID-19 pandemic caused the Borrowers' default." Report at 3 n.2. Because that argument is the subject of defendants' objection and has not been expressly addressed, the Court considers it *de novo*.

### 1.    Governing Legal Framework

New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") § 5001 provides, in relevant part, that "in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion." N.Y. C.P.L.R. § 5001(a).[1] "A foreclosure action is

---

[1] The parties agree that New York law applies.

equitable in nature and triggers the equitable powers of the court." *U.S. Bank Nat'l Ass'n v. Losner*, 44 N.Y.S.3d 467, 470 (2d Dep't 2016) (citation omitted). "The exercise of that discretion will be governed by the particular facts in each case." *Bank of N.Y. Mellon v. George*, 186 A.D.3d 661, 663–64 (2d Dep't 2020). "Where a plaintiff in a foreclosure action engaged in wrongful conduct or caused undue delay resulting in the accrual of interest, courts have found that equity may require the reduction of interest awarded on the unpaid principal balance of the mortgage." *In re Schlesinger*, 2024 WL 3841451, at *4 (Bankr. S.D.N.Y. Aug. 15, 2024).

### 2. Analysis

Defendants argue that Wells Fargo prolonged the foreclosure action by refusing to negotiate with them, thereby increasing Wells Fargo's default interest, special servicer fees, and yield maintenance premium—all charges which, defendants claim, increase with the passage of time.[2] Defs.' Obj. at 7. In support, they offer the declaration of defendant Edmond Li, who states, in relevant part, that (1) defendants "made repeated efforts and offers in an attempt to satisfy or refinance the loan," which Wells Fargo and the special servicer "have unreasonably and in bad faith rejected"; (2) defendants engaged Baker Street Capital Advisors—the fourth financial advisor retained in connection with this action—whose offers were all "rejected due to [the special servicer's] bad faith"; and (3) on or about April 21, 2026, defendants made an offer to which the special servicer has failed to respond. Dkt. 98-1 ("Li Decl.") ¶¶ 5–7. Based on the foregoing, Li states, Wells Fargo and the special servicer "have failed to negotiate in good faith and have unnecessarily, and perhaps intentionally, prolonged this foreclosure action." *Id.* ¶ 8.

---

[2] Although it is clear the default interest and special servicer fees increase with the passage of time, it is not clear the same is true for the yield maintenance premium. The Court assumes, for the purposes of its analysis, that the yield maintenance premium does so, as defendants claim.

6

The Court does not find a reduction in Wells Fargo's damages award warranted.

First, defendants have not demonstrated that Wells Fargo intentionally prolonged this action. On the contrary, the record supports that Wells Fargo has been proactive and diligent in prosecuting its foreclosure claims. On June 30, 2022—approximately two months after Wells Fargo accelerated the loan—Wells Fargo commenced this action. Dkt. 82 ¶ 26. On January 6, 2023, after a settlement conference, initial pretrial conference, and pre-motion conference, Wells Fargo promptly moved for summary judgment. Dkt. 50. It was defendants who asked for an extension of time to submit briefing in connection with that motion—a request Wells Fargo opposed because of its "intention to proceed with prosecution of the action." Dkt. 57. And, after the Court granted the motion for summary judgment on Wells Fargo's foreclosure claims and referred the calculation of the amount of the judgment of foreclosure to Judge Wang, Dkt. 68, Wells Fargo filed five letters requesting an update from Judge Wang on the status of that calculation, noting that "an earlier adjudication of Plaintiff's damages inures to the benefit of both Plaintiff and defendants alike." Dkt. 92; *see also* Dkts. 85, 88, 90, 91. The record accordingly does not support that Wells Fargo has delayed this action, much less intentionally. This case is thus far afield of those where courts have exercised their equitable authority to reduce interest based on plaintiffs prolonging litigation. *See, e.g., Meadowlands Portfolio, LLC v. Manton*, 988 N.Y.S.2d 782, 784 (4th Dep't 2014) (reducing rate of interest where "matter was pending for over 10 years, and much of the delay was attributable to plaintiff"); *Danielowich v. PBL Dev.*, 739 N.Y.S.2d 408, 409 (2d Dep't 2002) (same, based on "unexplained delay" of five months in moving to confirm referee's report); *Dayan v. York*, 859 N.Y.S.2d 673,

7

674 (2d Dep't 2008) (same, where plaintiff "did not seek a judgment of foreclosure and sale" until seven years after commencement of action).[3]

Second, far from failing to negotiate with defendants, it appears that Wells Fargo has been open to settling its claims. The parties participated in several pre-settlement conferences before Judge Wang. *See* Dkts. 40, 66. And the joint letters submitted in connection with those conferences suggested that settlement discussions between the parties were ongoing, albeit unfruitful. *See, e.g.*, Dkt. 58 (Wells Fargo, stating that it had engaged in negotiations with defendants, and "remain[ed] amenable to continuing a dialogue"); Dkt. 67 (Wells Fargo, stating that parties had discussed an offer "and various reiterations of the terms thereof in the subsequent weeks"). The record thus supports that Wells Fargo participated in good faith in negotiations with defendants.[4] That these did not result in a settlement does not imply bad faith on the part of Wells Fargo, which was not obliged to accept a modification of the loan. *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 143 (2d Cir. 2011) (lender "not obliged to forebear the exercise of [] legal rights" upon debtor's default).

Accordingly, the Court does not find that Wells Fargo "engaged in wrongful conduct or caused undue delay." *Schlesinger*, 2024 WL 3841451, at *4. The Court thus declines to exercise its equitable authority to reduce the default interest, special servicer fees, or yield maintenance premium. *See, e.g., id.* (declining to reduce interest where delay was not solely attributable to plaintiff, but to motion practice by debtor, periods of failed negotiations, and

---

[3] Because the Report only addresses post-default interest that accrued through December 2023, the Court does not consider whether to exercise its discretion to reduce interest that accrued between January 2024 and the present.

[4] The only settlement offer to which Wells Fargo purportedly failed to respond was made by defendants on April 21, 2026, Li Decl. ¶ 7—one week before the Report issued. That Wells Fargo responded to all of defendants' other offers supports that it negotiated in good faith.

pandemic); *Rora LLC v. 404 E. 79th St. Lender LLC*, 630 B.R. 876, 896 (E.D.N.Y. 2021) (same, where "foreclosure process has been delayed as a result of the ongoing litigation and through no fault of Appellee"); *People's United Bank v. Patio Gardens III, LLC*, 135 N.Y.S.3d 271, 272 (2d Dep't 2020) (delay in foreclosure action "cannot be solely attributable to the plaintiff, and . . . was not so egregious as to merit the imposition of sanctions against it in the form of limiting the interest awarded").

The cases on which defendants rely do not support a contrary conclusion. *Eastern Savings Bank, FSB v. McLaughlin*, No. 13 Civ. 1108, 2015 WL 5657355 (E.D.N.Y. Aug. 17, 2015), *report and recommendation adopted*, 2015 WL 5664454 (E.D.N.Y. Sept. 24, 2015), does not avail defendants. There, the court tolled the accrual of interest largely because the debtor was being "treated with chemotherapy for chronic, serious illnesses that worsened" prior to default—a far more extraordinary circumstance than the COVID-19 pandemic (the claimed cause of default here), which affected debtors across the country. *Id.* at *7. *Federal National Mortgage Association v. Singer*, 2015 WL 4379067 (N.Y. Sup. Ct. 2015) is inapposite: the plaintiffs there had a legal obligation to "negotiate in good faith to reach a mutually agreeable resolution, including a loan modification, if possible"—which is not true here.[5] *Id.* at *11 (quoting N.Y. C.P.L.R. § 3408(f)). And *United States Bank, N.A. v. Peralta*, 191 A.D.3d 924, 925 (2021) does not assist defendants because the plaintiff there "took no action" for four years after entry of an order of reference, whereas here, the Court has not found any delay attributable to Wells Fargo.[6]

---

[5] N.Y. C.P.L.R. § 3408 is inapplicable here because defendants are corporations and thus not "resident[s] of the property subject to foreclosure." *Id.* § 3408(a).

[6] Defendants also argue that Wells Fargo's claimed damages "shock[] the conscience," because a $32 million mortgage has "ballooned to over $46 million." Defs.' Obj. at 6–7. But defendants

Accordingly, the Court finds exercising its equitable authority unwarranted. The Court thus adopts the Report's recommendation with respect to the default interest, special servicer fees, and yield maintenance premium. *See, e.g., Bank of N.Y. Mellon*, 186 A.D.3d at 664 (declining to limit interest where defendant "failed to show that the plaintiff engaged in any wrongdoing" or caused "any lengthy unexplained delay in prosecution"); *Schlesinger*, 2024 WL 3841451, at *4 (similar); *Rora LLC*, 630 B.R. at 896 (similar); *People's United Bank*, 135 N.Y.S.3d at 272 (similar).

## CONCLUSION

For the foregoing reasons, the Court adopts the Report in its entirety. The Court adopts the Report's recommendations as to each category of damages, and awards a total judgment of $46,677,820.90 to Wells Fargo. The Court grants Wells Fargo leave to make an additional application for damages, including additional interest, any liquidation fee, and any additional attorneys' costs and fees after completing the anticipated foreclosure sale.

The Court directs Wells Fargo, by July 15, 2026, to file a letter on the docket as to proposed next steps in the case. Any response by defendants is due July 22, 2026.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: July 1, 2026
New York, New York

---

fail to develop this argument or provide caselaw that supports it. *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994)—the only case defendants cite on this point—stated that, after a foreclosure sale, state foreclosure law provides that the sale will be set aside "if the price is so low as to 'shock the conscience or raise a presumption of fraud or unfairness.'" *Id.* at 542 (citation omitted). Because no foreclosure sale has occurred here, *BFP* does not assist defendants.

10